IN THE UNITED STATES DISTRICT COURT

OR THE DISTRICT OF DELAWARE

GEORGE B. SHAW,                          :
                                         :
            Plaintiff,                   :
                                         :
    v.                                   :        Civ. No. 18-1766-LPS
                                         :
CONNECTIONS, et al.,                     :
                                         :
            Defendants.                  :

## MEMORANDUM

## I.      INTRODUCTION

Plaintiff George B. Shaw ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 alleging

violations of his constitutional rights.[1]  (D.I. 2)  Plaintiff is incarcerated at the James T. Vaughn

Correctional Center ("JTVCC") in Smyrna, Delaware.  He appears *pro se* and has been granted leave

to proceed *in forma pauperis.*  (D.I. 6)

## II.     BACKGROUND

Plaintiff recently filed a motion for injunctive relief over his treatment while on psychiatric

close observation ("PCO") status and seeks mental health medication and placement in the

residential treatment center.  (D.I. 10; *see also* D.I. 13)  Warden Dana Metzger opposes the motion.

(D.I. 12)

## III.    LEGAL STANDARDS

A preliminary injunction is "an extraordinary remedy that should be granted only if: (1) the

plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff;

---

[1] Plaintiff's Complaint has not yet been screened and no defendants have been served.  In light of
the relief sought by Plaintiff, the Court ordered JTVCC Warden Dana Metzger to file a responses to
the motion.  (*See* D.I. 11)

(3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("NutraSweet II"). The elements also apply to temporary restraining orders. *See NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997) ("*NutraSweet I*") (temporary restraining order continued beyond time permissible under Rule 65 must be treated as preliminary injunction, and must conform to standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d at 153. Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *See Rush v. Correctional Med. Services, Inc.*, 287 F. App'x 142, 144 (3d Cir. July 31, 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

## IV.  DISCUSSION

Plaintiff claims that JTVCC subjects inmates to "cruel and unusual punishment" when inmates are placed on PCO status and that the Delaware Department of Correction ("DOC") and staff of Connections ("Connections"), the medical service contract provider, are deliberately indifferent to his medical needs. (D.I. 10 at 1, 5) In his motion, Plaintiff states that those on PCO status are served cold finger food instead of the "regular menu," are subjected to three shakedowns per day, and must use finger tooth pads instead of toothbrushes. He also complains of the small size of his cell and the lack of reading material, and makes general complaints about mental health treatment. For relief Plaintiff seeks an order: (1) prohibiting serving finger foods, three shakedowns per day, and the use of finger tooth pads instead of toothbrushes; (2) prohibiting the use of PCO as

a punishment for inmates; (3) prescribing "his" medication; (4) transferring to the residential treatment center; and (5) prohibiting his housing in the 18-C Tier. (*Id.* at 8)

In opposition to the motion, Warden Metzger provides the declaration of Dr. Aileen Fink ("Dr. Fink"), Director of Behavioral Health of Correctional Health Care Services for the DOC. (D.I. 12-1 at 2-4) Dr. Fink states that Plaintiff has been diagnosed with antisocial personality disorder and malingering. (*Id.* at ¶ 5) She states that Plaintiff was discharged from the residential treatment center in February 2019 because of a history of deteriorating mental health and threatening behavior towards staff. (*Id.* at ¶ 6) On several occasions, Plaintiff threatened to kill staff and family of staff and to enact a mass shooting upon his release. (*Id.*) She states that Plaintiff continues on the mental health roster as an individual with serious mental illness who is receiving BH3 level of care. (*Id.* at ¶ 7) Warden Metzger explains that BH3 level of care criteria include a history of behavioral health diagnosis/treatment and current symptoms that can be treated at an outpatient level of care, and its services include individual therapy and medication services. (D.I. 12 at n.6) Warden Metzger further explains that Plaintiff mistakenly believes that he is classified as requiring BH4 level of care. (*Id.*)

Dr. Fink states that, since 2015, Plaintiff has received and continues to receive regular mental health care for his mental health condition. (D.I. 12-1 at ¶ 6) She states that Plaintiff has been prescribed several medications for his conditions, and frequently refuses to take his medication. (*Id.* at ¶ 8) Plaintiff is currently offered twice-weekly clinician visits and psychologist visits once every two weeks, and Dr. Fink states that Plaintiff is seen frequently through the sick call process. (*Id.* at

¶ 7) According to Dr. Fink, Plaintiff's current housing placement is dictated by his suicidal and violent tendencies, as well as the concern for Plaintiff's tendencies for self-harm. (*Id.* at ¶ 9)

As is well-established, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 12, 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Plaintiff's apparent goal is to return to the treatment center. The evidence of record indicates that, contrary to the position in his motion, mental health professionals are aware of Plaintiff's condition, Plaintiff received and continues to receive mental health treatment, and his condition is regularly monitored through consults by mental health professionals.

Moreover, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of

4

federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *See Bell v. Wolfish*, 441 U.S. 520, 527 (1979). The Court has not been provided persuasive evidence to depart from these norms and, thus, will not interfere in the Department of Correction's determination where to house Plaintiff.

In light of the foregoing, the Court finds that Plaintiff has neither demonstrated the likelihood of success on the merits, nor demonstrated irreparable harm to justify the issuance of immediate injunctive relief. Therefore, the motion will be denied.

## IV. CONCLUSION

For the above reasons, the Court will deny the motion for injunctive relief. (D.I. 10) An appropriate Order follows.

September 24, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE