# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

GEORGE B. SHAW,                              :
                                            :
          Plaintiff,                        :
                                            :
     v.                                     : Civ. No. 18-1766-LPS
                                            :
PAOLA A. MUNOZ, et al.,                     :
                                            :
          Defendants.                       :

---

George B. Shaw, Sussex Correctional Institution, Georgetown, Delaware.  Pro Se Plaintiff

Dana Spring Monzo, Esquire, and Karine Sarkisian, Esquire, White & Williams, Wilmington, Delaware.  Counsel for Defendants Paola A. Munoz, Stephanie Evans-Mitchell, Michelle Marcantuno, Maina Onesmas, Wendy Rogers, Kathy Potter, and Erik Lowery

Kenneth Lee-Kay Wan and Rebecca Song, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendant Roland Willey

### **MEMORANDUM OPINION**

March 15, 2021
Wilmington, Delaware

STARK, U.S. District Judge:

## I.  INTRODUCTION

Plaintiff George B. Shaw ("Plaintiff"), an inmate at Sussex Correctional Institution in Georgetown, Delaware, Delaware, filed this action pursuant to 42 U.S.C. § 1983.  (D.I. 2)  He appears *pro se* and has been granted leave to proceed *in forma pauperis*.  (D.I. 6)[1]  Before the Court are Defendants' motions to dismiss.  (D.I. 32, 33)  Plaintiff did not respond to the motions despite asking for, and receiving, an extension of time to do so.  (D.I. 44, 47)

## II.  BACKGROUND

Plaintiff has a history of suicide attempts and being placed on psychiatric close observation ("PCO").  The Complaint contains a time-line of events from November 24, 2016 through July 2, 2018 and provides a description of Plaintiff's interactions with medical personnel and Delaware Department of Correction ("DOC") personnel.  The Complaint refers to multiple suicide attempts by Plaintiff, several trips to the hospital, transfers to and from PCO and other tiers, and the administration of medication.

The Court screened the Complaint on September 26, 2019 and, upon screening, dismissed Defendants Connections, Kristopher T. Starr, Randall Dotson, and Kevin Larich.  Plaintiff was allowed to proceed with forced administration of medication claims against Defendants Wendy Rogers and Kathy Potter, and deliberate indifference to serious medical needs claims against Defendants Paola A. Munoz, Stephanie Evans-Mitchell, Michelle Marcantuno, Maina Onesmas, and

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Erik Lowery ("Medical Defendants"), and a deliberate indifference claim against Roland Willey ("Willey").[2]

Willey and Medical Defendants move to dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies on the claims raised against them. (D.I. 32, 33)  Medical Defendants' other grounds for dismissal include: (1) the Complaint fails to state claims for deliberate indifference under the Eighth Amendment;[3] (2) the Complaint fails to state claims for violation of the Fourteenth Amendment liberty interest against administration of unwanted psychotropic medication; and (3) Plaintiff failed to attach an affidavit of merit as required for medical negligence claims under Delaware law.

## III.    LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).  Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff

---

[2] Misspelled in the Complaint as "Wiley."

[3] The Court does not address that portion of Medical Defendants' motion to dismiss the claims against Connections.  Connections was dismissed when the Court screened the Complaint.

must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## IV.    DISCUSSION

### A.    Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies and, therefore, the § 1983 claims must be dismissed.

3

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion of those administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *See Jones v. Bock*, 549 U.S. 199 (2007); *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019). Failure to exhaust administrative remedies must be pled and proved by the defendant. *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.").

Exhaustion applies only when administrative remedies are "available." *See Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850 (2016). Administrative remedies are not available when the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d

4

Cir. 2020) (citing *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies.")). "When an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

The Complaint alleges that Willey, who knew of Plaintiff's suicide attempts, was deliberately indifferent when he failed to shakedown Plaintiff's cell, and Plaintiff attempted to hang himself with a towel. To support his position that Plaintiff failed to exhaust his administrative remedies, Willey refers to another case filed by Plaintiff, *Shaw v. Pierce*, Civ. Act. No. 17-076-LPS D.I. 38, 39, that through discovery produced all known grievances filed by Plaintiff as of January 29, 2019. Medical Defendants' also move to dismiss for failure to exhaust administrative remedies. Plaintiff alleges that Medical Defendants had knowledge of a substantial risk of harm to Plaintiff through his threats of self-harm, failed to protect Plaintiff from harming himself, subjected him to forced administration of medication, and did not place him on the proper medical status. Medical Defendants rely upon the documents produced by Willey to support dismissal for failure to exhaust administrative remedies.

Plaintiff filed the following medical grievances: Grievance No. 378778, submitted on September 1, 2017, complains that Plaintiff attempted suicide in April and June 2017, and that he was not placed on the proper status, which allowed him to hurt himself. (D.I. 32-1 at 2) Plaintiff asked for placement to the proper status and suspension of the mental health doctor who failed to change his level. (*Id.*) The grievance was returned as unprocessed and Plaintiff was encouraged to utilize the sick call request process for initial resolution of the complaint prior to forwarding a grievance. (*Id.* at 3)

Grievance No. 405854, submitted on May 25, 2018, complains that when Plaintiff was on suicide watch on June 6, 2017, he was moved from the infirmary to the isolation tier and attempted suicide. (*Id.* at 5) He was not placed on constant watch after the attempt, was only given "a needle," and then allowed to break a light, after which he swallowed glass. (*Id.* at 5) The grievance requests a policy change that inmates who attempt suicide are placed on the proper level of care. (*Id.*) The grievance was returned unprocessed because it appeared "to be a duplicate of grievance 392562 which was addressed by MGC on 5/10/2018." (*Id.* at 6-7)

Grievance No. 407100, submitted on June 5, 2018, complains that, because Grievance No. 405854 was improperly returned as unprocessed since the issue raised in Grievance No. 405854 was never raised in Grievance No. 392562 and neither incident is related, Plaintiff was refiling the grievance. (*Id.* at 9) Plaintiff asked that someone be held accountable for failing to place him on the proper status. (*Id.*) Grievance No. 407100 was returned as unprocessed as it concerned an incident in 2017 and, per DOC Policy, grievances must be submitted within seven days of the incident. (*Id.* at 10)

None of the grievances refers to Willey, complains about a failure to inspect Plaintiff's cell, or refers to a towel left in Plaintiff's cell. Plaintiff has not refuted the evidence provided by Willey, which clearly demonstrates Plaintiff did not exhaust his administrative remedies on the claims against Willey. Therefore, Willey's motion to dismiss will be granted based on Plaintiff's failure to exhaust administrative remedies.

For Medical Defendants, there is a specific procedure for inmates to follow when complaining about health care. The grievance process for healthcare complaints is as follows: Bureau of Healthcare, Substance Abuse, and Mental Health Services Policy No. A-10 provides that offenders must submit a grievance form to the Institutional Grievance Chair (IGC) within 7

calendar days of the incident (*e.g.*, a sick call encounter) and offenders must fully utilize the sick call process before submitting a grievance related to a healthcare concern.  *See* Policy A-10 Grievance Process for Healthcare Complaints, https://doc.delaware.gov/assets/documents/policies/policy_ 11-A-10.pdf (last visited Mar. 10, 2021).  Once the grievance meets the initial requirements, the grievance process consists of three steps: informal resolution, medical grievance committee hearing, and appeal of the medical grievance committee's recommendation.  *See id.*

Plaintiff failed to exhaust his administrative remedies on the claims raised against Medical Defendants.  Grievance No. 378778 was returned as unprocessed because Plaintiff did not utilize the sick call request process for his complaint prior to forwarding a grievance, as required. Grievance No. 405854 was returned as unprocessed because it appeared to be a duplicate of Grievance No. 392592.  Grievance No. 407100, which clarified Plaintiff was complaining of different issues, was returned as untimely.[4]  Plaintiff failed to fully exhaust his administrative remedies on the § 1983 claims raised against Medical Defendants.

Accordingly, the Court will grant Defendants' motions to dismiss on the grounds that Plaintiff failed to fully exhaust his administrative claims prior to commencement of this action.

### B.    Negligence Claims

Medical Defendants move to dismiss all medical negligence claims to the extent Plaintiff is intending to raise negligence claims.  In Delaware, medical negligence is governed by the Delaware Health Care Negligence Insurance and Litigation Act.  *See* 18 Del. C. §§ 6801-6865.  When a party alleges medical negligence, Delaware law requires that party to produce an affidavit of merit with expert medical testimony, detailing: (1) the applicable standard of care, (2) the alleged deviation from

---

[4] The Court notes that, although Grievance No. 405854 was returned as a duplicate grievance, it was also not timely submitted.

that standard, and (3) the causal link between the deviation and the alleged injury. *See Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (citing *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)); 18 Del. C. § 6853. To extent Plaintiff alleges medical negligence, at the time he filed the Complaint he was required to submit an affidavit of merit as to each defendant signed by an expert witness. *See* 18 Del. C. § 6853(a)(1). He did not.

Therefore, the Court will grant Medical Defendants' motion to dismiss the medical negligence claims.

## V.   CONCLUSION

For the above reasons, the Court will grant Defendants' motion to dismiss. (D.I. 32, 33)[5]

An appropriate Order will be entered.

---

[5] The Court does not address the other grounds for dismissal raised by Medical Defendants.